```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :
WATSONTOWN TRUCKING COMPANY and                       :
JUDITH A. RENDA,                                      :
                                                      :
                          Plaintiffs,                 :      16 Civ. 9166 (KPF)
                                                      :
                   v.                                 :      OPINION AND ORDER
                                                      :
U.S. DEPARTMENT OF LABOR,                             :
                                                      :
                          Defendant.                  :
                                                      :
------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 17, 2018

KATHERINE POLK FAILLA, District Judge:

      Plaintiffs Watsontown Trucking Company ("Watsontown") and Judith A. Renda (together, "Plaintiffs") bring this action under the Administrative Procedures Act ("APA"), 5 U.S.C. ch. 5, and the Declaratory Judgment Act, 28 U.S.C. ch. 151, seeking judicial review of Defendant Department of Labor's refusal to comply with two subpoenas issued by Plaintiffs in connection with a personal injury action in New York State Supreme Court, Westchester County. Defendant now moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Defendant's motion is granted.

## BACKGROUND[1]

### A. Factual Background

Plaintiffs here are defendants in an underlying personal injury lawsuit that is pending in state court, and they have filed this action to enforce two subpoenas they served on employees of the Occupational Safety and Health Administration ("OSHA") in that lawsuit. The underlying litigation is an action to recover for injuries allegedly sustained by Michael Lenahan on May 9, 2013: Lenahan "was working on a traffic light in a bucket above traffic ... when a tractor trailer operated by ... Renda, and owned by ... Watsontown[,] ... struck the bucket following which Mr. Lenahan fell from the bucket to the ground." (FAC ¶¶ 2, 6).

OSHA conducted an investigation of the incident; it issued citations to, and ultimately settled with, Lenahan's employer, Verde Electric Corp. (FAC ¶ 7). OSHA determined that "one of the chief causal factors of the accident [was] the lack of warning devices" surrounding the raised bucket in which Lenahan was working. (*Id.* at ¶ 9). OSHA also remarked that it was "entirely possible that the boom of the aerial lift may have been parallel to the support arm of the traffic signals thereby hiding it from view" and added that the

---

[1] This Opinion draws principally on facts from First Amended Complaint ("FAC" (Dkt. #4)), and the exhibits attached thereto. The Court takes all well-pleaded factual allegations to be true. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). The exhibits to the FAC are provided without letter or number designations, but they were uploaded to the Court's Electronic Case Filing system as separate documents; for this reason, the Court will refer to the exhibits throughout this Opinion by their number on this case's docket. For ease of reference, the Court will refer to Defendant's memorandum of law in support of its motion to dismiss as "Def. Br." (Dkt. #16), to Plaintiffs' opposition as "Pl. Opp." (Dkt. #19), and to Defendant's reply in support of its motion as "Def. Reply" (Dkt. #20).

bucket was a "drab grey," "which may have allowed it to blend into the overcast conditions." (*Id.*). Plaintiffs aver that "[t]hese findings are essential for [their] defense" in the underlying personal injury action insofar as they "provide evidence that [ ] Renda was not negligent[.]" (*Id.* at ¶ 10).

On April 27, 2016, Plaintiffs' counsel served subpoenas on OSHA employees Robert Ortiz and Diana Cortez, directing them to appear for depositions. (Dkt. #4-8, 4-9; FAC ¶ 11). After receiving the subpoenas, Defendant informed Plaintiffs that Ortiz was no longer employed by OSHA and that, as to Cortez, Plaintiffs were required to submit a statement explaining why they needed her testimony. (FAC ¶ 11; Dkt. #4-10). Plaintiffs responded on May 10, 2016, explaining that while they had "some documentation" from OSHA's investigation, they wanted to depose "the appropriate representative" — whom they presumed to be Cortez — because "any documentation generated by OSHA would be deemed hearsay if the representative who prepared the report(s) did not appear in person to offer deposition testimony regarding the investigation performed and any conclusions reached." (Dkt. #4-10). Plaintiffs added that they also wanted to understand "what [Cortez] might testify to if she is *subpoenaed* to testify at the time of trial." (*Id.*).

Defendant responded on May 26, 2016, citing its obligation to "weigh the party's 'need for the testimony [or documents] against the adverse effects on [Defendant's] concerns,'" which include "'centralizing the dissemination of information of the agency (e.g. restricting investigators from expressing opinions on policy matters), minimizing governmental involvement in

3

controversial matters unrelated to official business and avoiding the expenditure of government time and money for private purposes.'" (Dkt. #44-11 (quoting *Baker* v. *United States Dep't of Labor*, 31 F. Supp. 2d 985, 987 (S.D. Fla. 1998) (first alteration in original))).

In the May 26 letter, Defendant acknowledged Plaintiffs' proffered reasons for seeking Cortez's testimony, but declined to authorize either Ortiz or Cortez to testify. (Dkt. #44-11). It explained that Plaintiffs needed to show that the "information sought is both relevant and essential to the presentation of his or her case"; that there "are no reasonable alternative means for acquiring the information sought[;] and that a significant injustice would ensue if the desired testimony or records were not to be made available." (*Id.* (internal quotation marks omitted) (quoting *Herr* v. *McCormick Grain-The Heiman Co.*, No. 92-1321, 1994 WL 324558, at *2 (D. Kan. June 28, 1994))). Defendant went on to explain that Cortez was an "Area Director" who worked in a supervisory role and did not participate in the investigation, and, further, that Ortiz had left OSHA before the investigation was completed and would likely not "be able to provide the depth of knowledge you seek." (*Id.*). Moreover, Defendant noted, Plaintiffs could have obtained information about the investigation from alternate sources, such as a request under the Freedom of Information Act ("FOIA") for the investigative file. (*Id.*). Finally, Defendant explained that Cortez had significant managerial and public outreach responsibilities, and diverting her away from her role to prepare and sit for a deposition "would be a drain on OSHA's scarce resources." (*Id.*).

After receiving this denial, Plaintiffs sent a letter on July 6, 2016, asking for "reconsideration of this denial." (Dkt. #4-12). Plaintiffs offered to work with OSHA to determine the employee who would have the most information and offered to travel to OSHA's offices for the deposition. (*Id.*). Plaintiffs also reiterated that the documentation in the investigative file would be "useless" without a witness to authenticate it, and that they needed this testimony because "much of [their] defense relies upon the ability to prove that [Verde Electric Corp.] was negligent in maintaining a safe work place for [Lenahan.]" (*Id.*). Defendant then informed Plaintiffs, by email dated July 14, 2016, that "unlike FOIA, there is no internal appeal process for this type of denial," and, accordingly, that their second letter was not considered. (Dkt. #4-13).

**B. Procedural Background**

Plaintiffs filed this action for judicial review several months later, on November 26, 2016. (Dkt. #1). They filed an amended complaint on December 30, 2016. (Dkt. #4). On May 9, 2017, Defendant informed the Court of its intent to move to dismiss the complaint (Dkt. #12), and the Court held a pre-motion conference with the parties on May 12, 2017 (Dkt. #14). Defendant filed its motion to dismiss on June 30, 2017 (Dkt. #15); Plaintiffs filed their opposition brief on July 31, 2017 (Dkt. #19); and the motion was fully briefed when Defendant filed its reply on August 14, 2017 (Dkt. #20).

## DISCUSSION

### A. Applicable Law

#### 1. Motions to Dismiss Under Rule 12(b)(6)

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). In reviewing Defendant's motion, the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor." *Biro* v. *Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015). It is not enough for a plaintiff to allege "naked assertions or conclusory statements," rather a plaintiff must come forward with "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks omitted).

#### 2. Judicial Review Under the APA[2]

Section 702 of the APA provides that "[a] person suffering legal wrong because of agency action … is entitled to judicial review thereof." 5 U.S.C. § 702. A reviewing court "will uphold a decision by the [agency] if it is not 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

---

[2] There is, as Defendant notes, an open question in the Second Circuit "whether a final agency decision regarding a discovery request must be reviewed using the deferential standard under APA § 706 or under the Federal Rules of Civil Procedure." *Wultz* v. *Bank of China Ltd.*, 61 F. Supp. 3d 272, 280-81 (S.D.N.Y. 2013) (citing *In re SEC ex rel. Glotzer*, 374 F.3d 184, 191 (2d Cir. 2004)). Because Plaintiffs have filed this action under § 702 of the APA, the Court may proceed on that basis and need not resolve this question.

with law' … or 'unsupported by substantial evidence.'" *Unified Turbines, Inc.* v. *U.S. Dep't of Labor*, 581 F. App'x 16, 17 (2d Cir. 2014) (summary order) (quoting 5 U.S.C. § 706). This standard is deferential and does not permit a court to "substitute its judgment for that of the agency." *Judulang* v. *Holder*, 565 U.S. 42, 53 (2011). The Court must "assess, among other matters, whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Bechtel* v. *Admin. Review Bd., U.S. Dep't of Labor*, 710 F.3d 443, 446 (2d Cir. 2013) (quoting *Judulang*, 565 U.S. at 53). Because Defendant's denial of Plaintiffs' request for testimony from an OSHA employee was a "final agency action for which there is no other adequate remedy," this matter is ripe for judicial review. 5 U.S.C. § 704.

**B. Analysis**

**1. Defendant's Procedures for Discovery Requests**

Under *United States ex rel. Touhy* v. *Ragen*, a federal agency may promulgate "regulations not inconsistent with law for the custody, use, and preservation of the records, papers, and property appertaining to" the disclosure of agency files and information. 340 U.S. 462, 468 (1951); *U.S. Envtl. Prot. Agency* v. *Gen. Elec. Co.*, 197 F.3d 592, 595 (2d Cir. 1999); *see also* 5 U.S.C. § 301. Defendant has done so, and these regulations provide that "the party causing the subpoena to be issued" must provide to the agency's Office of the Solicitor a "written summary of the information sought and its relevance to the proceeding in connection with which it was served." 29 C.F.R. § 2.21. Importantly, Defendant's employees may not "disclose any information or

7

produce any material ... without approval of the appropriate Deputy Solicitor of Labor." *Id.* § 2.22. When deciding whether to approve a request for testimony or documents, Defendant balances the requesting party's need for the testimony with the potential for "adverse effects on [Defendant's] concerns." *Manzo* v. *Stanley Black & Decker*, No. 13 Civ. 3963 (JFB) (SIL), 2017 WL 1194651, at *5 (E.D.N.Y. Mar. 30, 2017) (citing *Baker*, 31 F. Supp. 2d at 987).

### 2. Defendant's Denial of Plaintiffs' Request Was Reasonable

In reviewing Defendant's decision, the Court is mindful that the APA does not permit a court to "weigh the evidence or substitute its judgment for that of the agency." *Islander East Pipeline Co., LLC* v. *McCarthy*, 525 F.3d 141, 150 (2d Cir. 2008). Rather, the Court may only consider whether Defendant's denial of Plaintiffs' request was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Defendant's denial was none of those things. After receiving Plaintiffs' subpoenas, a representative from Defendant called Plaintiffs' counsel and informed him of the need to follow Defendant's regulations promulgated under *Touhy*. (Dkt. #4-10). Plaintiffs responded that they needed the deposition testimony because the OSHA investigative file would be deemed hearsay without authentication by someone who participated in its creation, and, further, that they wanted a preview of the OSHA witness's potential testimony in the underlying personal injury action. (*Id.*).

It was on this record that Defendant denied the request, after balancing Plaintiffs' need for the testimony against its own considerations. (Dkt. #4-11).

8

Defendant did not deviate from its *Touhy* regulations — and, as Defendant notes, Plaintiffs do not allege they did. (Def. Br. 7). In reviewing Plaintiffs' request, Defendant acknowledged the reasons provided — the need to authenticate documents and prepare for trial — and explained in detail why those reasons did not overcome Defendant's concerns about dispatching its employees to testify. (Dkt. #4-11).

Defendant gave the following reasons in support of its denial: (i) the individuals from whom Plaintiffs sought testimony may not, in fact, have had much information about the investigation; (ii) Plaintiffs could obtain the investigative file through a FOIA request; (iii) Plaintiffs could gather information about the investigation from "the normal tools of discovery or via subpoenas issued to other parties outside the federal government"; (iv) sending OSHA employees to testify (including the time spent preparing for and giving testimony) would be a drain on resources in this particular instance, and a potentially greater drain if Defendant were to grant such requests routinely; and (v) a significant injustice would not ensue from Defendant's refusal to produce an employee for deposition. (Dkt. #4-11). Even if the Court did not agree with these reasons, it finds no basis in this record to find that Defendant "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product

9

of agency expertise." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc.* v. *State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Plaintiffs' arguments to the contrary are unavailing. They argue principally that Defendant failed to consider an important aspect of the problem, and rendered a decision contrary to the evidence before it, insofar as Defendant did not consider that (i) "any documents obtained through a FOIA request would be considered hearsay and inadmissible at trial;" and (ii) Plaintiffs sought the "personal observations and conclusions of the OSHA investigator," not merely documents. (Pl. Opp. 7-8). Both contentions are belied by the record. Defendant's denial letter expressly referenced Plaintiffs' stated need to "authenticate documents generated by OSHA" and pointed out that information about the investigation could be obtained from sources outside the federal government. (Dkt. #4-11). That the letter spoke about "authentication" instead of using the word "hearsay" is of no matter. Defendant's denial letter plainly acknowledged Plaintiffs' assertion that OSHA's documents "would be hearsay" without a witness to authenticate them and offered an alternative — namely, that Plaintiffs could pursue discovery from other, non-governmental parties that were involved in the investigation.

Defendant also expressly referenced Plaintiffs' proffered need to ask Cortez about "the investigation performed and the conclusions reached." (Dkt. #4-11). Again, that the letter did not use the phrase "personal observations" — a phrase that does not appear in Plaintiffs' request — does not alter the analysis. It is evident from the face of Defendant's response that Defendant

of agency expertise." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc.* v. *State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Plaintiffs' arguments to the contrary are unavailing. They argue principally that Defendant failed to consider an important aspect of the problem, and rendered a decision contrary to the evidence before it, insofar as Defendant did not consider that (i) "any documents obtained through a FOIA request would be considered hearsay and inadmissible at trial;" and (ii) Plaintiffs sought the "personal observations and conclusions of the OSHA investigator," not merely documents. (Pl. Opp. 7-8). Both contentions are belied by the record. Defendant's denial letter expressly referenced Plaintiffs' stated need to "authenticate documents generated by OSHA" and pointed out that information about the investigation could be obtained from sources outside the federal government. (Dkt. #4-11). That the letter spoke about "authentication" instead of using the word "hearsay" is of no matter. Defendant's denial letter plainly acknowledged Plaintiffs' assertion that OSHA's documents "would be hearsay" without a witness to authenticate them and offered an alternative — namely, that Plaintiffs could pursue discovery from other, non-governmental parties that were involved in the investigation.

Defendant also expressly referenced Plaintiffs' proffered need to ask Cortez about "the investigation performed and the conclusions reached." (Dkt. #4-11). Again, that the letter did not use the phrase "personal observations" — a phrase that does not appear in Plaintiffs' request — does not alter the analysis. It is evident from the face of Defendant's response that Defendant

considered Plaintiffs' need for Cortez's testimony and decided that the need for the testimony did not outweigh Defendant's concerns about permitting it.

Finally, Plaintiffs argue that Defendant's denial was arbitrary and capricious because Defendant did not consider Plaintiffs' offer to work with Defendant to identify "the individual with the most knowledge" and to "travel to any location and accommodate any schedule demands necessary to mitigate any disruption to the witness' duties." (Pl. Opp. 8). But Defendant explains that it is "entitled to consider the cumulative effect of permitting deposition testimony by employees." (Def. Br. 12). Defendant is correct that it may consider the burden of permitting its employees to testify. (Dkt. #4-11 (collecting cases)). *See also Manzo*, 2017 WL 1194651, at *5. Because Defendant could properly consider the burden of permitting Cortez to sit for a deposition, the Court may not second-guess Defendant's determination that the burden outweighed the benefit. Thus, the Court holds that Defendant's denial was not based on impermissible considerations, was not "arbitrary [or] capricious," and did not violate the APA. And because the Court affirms Defendant's denial on this basis, Plaintiff is not entitled to the declaratory relief it seeks.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. The Clerk of Court is directed to adjourn all remaining dates, terminate all pending motions, and close this case.

SO ORDERED.

Dated: January 17, 2018
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge